UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUNICE QUINTANA,<br><br>            Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>            Defendant. | No.  2:15-cv-1801-EFB<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  The parties have filed cross-motions for summary judgment.  For the reasons discussed below, plaintiff's motion for summary judgment is denied and the Commissioner's motion is granted.

I.     BACKGROUND

Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she had been disabled since August 8, 2011.  Administrative Record ("AR") 219-233.  Plaintiff's applications were denied initially and upon reconsideration.  *Id.* at 160-166, 168-174.  On October 23, 2013, a hearing was held before administrative law judge ("ALJ") Catherine R.

1

Lazuran. *Id.* at 38-87.  Plaintiff was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified. *Id.*

On February 27, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1]  *Id*. at 19-30.  The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since August 8, 2011, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

3. The claimant has the following severe impairments: fibromyalgia; lumbar degenerative disc disease; restrictive airways disease and sleep apnea; obesity; and a mood disorder (20 CFR 404.1520(c) and 416.920(c)).

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for the following limitations: she can lift 50 pounds occasionally, 25 pounds frequently; stand/walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; and frequently climb, stoop, kneel, crouch, and crawl.  She should avoid driving and operating heavy equipment; and can frequently handle, finger, and reach.  She can do simple, routine, repetitive tasks involving occasional interaction with others in the workplace.

   * * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

   * * *

7. The claimant was born [in] 1972 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    * * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 8, 2011 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 21-30.

Plaintiff's request for Appeals Council review was denied on June 24, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-3.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that the ALJ erred by (1) rejecting the opinion from her examining physician without providing legally sufficient reasons, and (2) failing to find that she had a severe neck impairment. ECF No. 15 at 8-14.

A. The ALJ Properly Evaluated the Medical Opinion Evidence

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know

4

and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Plaintiff received mental health treatment from Drs. Franco Song Seo and Gary Farber. Dr. Farber diagnosed plaintiff with bipolar disorder and opined that plaintiff's disability was "moderate," but that she could still work "with support." AR 412. Dr. Song Seo, also a treating physician, provided the same diagnosis and opinion. *Id.* at 436-437.

Plaintiff underwent a psychological evaluation, which was conducted by Dr. J.K. Zhang, Psy.D, an examining medical source. AR 390-392. Plaintiff's primary complaint was depression, which she claimed she first experienced in 2008. *Id.* at 390. Plaintiff reported that she had been married 4 times, was currently divorced with two children, had no friends, and had poor family relationships. *Id.* at 391. She also told Dr. Zhang that her sleep was often restless; she only showered 3 times a week; and that she spent most of her day conducting housekeeping chores, reading self-help books and the Bible, and listening to music. *Id.* She also claims that she was unable to go out alone, and denied any history of substance abuse. *Id.* Plaintiff reported that she had been experiencing frequent auditory hallucinations for the past 2 years, paranoid ideations, depressed and anxious mood, and chronic suicidal ideations. *Id.*

On examination, Dr. Zhang observed that plaintiff's attire was appropriate and her grooming and hygiene were adequate. *Id*. Plaintiff spoke slowly in a soft voice and demonstrated mild psychomotor retardation. *Id*. Dr. Zhang found that plaintiff volunteered information spontaneously, appeared to be truthful, and that there was no evidence of exaggeration. *Id*. Plaintiff was alert and oriented in all spheres and showed adequate capacity and willingness to cooperate. *Id*. Her intellectual functioning, fund of general information, and memory for past events were all below average, but her attention and concentration was fair and she was able to remain focused during the evaluation. *Id*. at 391-392. She also showed moderately limited insight and a history of poor judgment. *Id*. at 392.

Dr. Zhang found that plaintiff showed marked mood disturbances with psychosis and a history of maladaptive personality. *Id*. It was Dr. Zhang's opinion that plaintiff had no limitations in understanding, remembering, and carrying out simple one or two-step instructions, but had marked limitations in understanding, remembering, and carrying out complex instructions; interacting appropriately with the public, coworkers, and supervisors; maintaining adequate concentration, persistence, and pace; associating with common work activity including attendance and safety; and performing activities without special or additional supervision. *Id*. Dr. Zhang also opined that plaintiff had moderate limitations in accepting instructions from supervisors and maintaining regular attendance and performing work activities consistently. *Id*.

The record also contains opinions from non-examining physicians Dr. Anna Franco, Psy.D., and Dr. Uwe Jacobs, Ph.D. *Id*. at 100-101, 117-118, 135-136. Dr. Franco opined that plaintiff was moderately limited in understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, and interacting appropriately with the general public, but that she maintained the ability to perform simple repetitive work on a sustained basis provided she has limited public contact and customary breaks. *Id*. at 100-101, 117-118. Dr. Jacobs concurred with Dr. Franco's opinion. *Id*. at 135-136, 151-152.

/////

/////

In assessing plaintiff's RFC, the ALJ gave little weight to Dr. Zhang's opinion, some weight to Drs. Song Seo and Faber's opinions, and great weight to Drs. Franco and Jacobs's opinions. AR 28. Plaintiff contends that the ALJ failed to provide legally sufficient reasons for discrediting Dr. Zhang's opinion. ECF No. 15 at 8-12. As Dr. Zhang's opinion was contradicted by other medical opinions, the ALJ was required to provide specific and legitimate reasons for rejecting it. *See Lester*, 81 F.3d at 830-31.

The ALJ rejected Dr. Zhang's opinion because "he appeared to have relied largely on claimant's subjective allegations, and his reported marked limitations are inconsistent with his observations at the interview that claimant had mild psychomotor retardation, adequate grooming and hygiene, adequate capacity and willingness to cooperate with the evaluation, and fair attention and concentration." AR 28. An ALJ may reject a physician's opinion where it is premised primarily on plaintiff's subjective complaints and the ALJ properly discounted plaintiff's credibility." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Furthermore, inconsistency in a doctor's opinions, observations, and clinical notes "is a clear and convincing reason for not relying on the doctor's opinion" regarding the claimant's abilities or limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

As noted, Dr. Zhang opined that plaintiff had moderate and marked limitations in all areas of mental functions except in understanding, remembering, and carrying our simple instructions. AR 392. However, his findings from the exam do not contain any observations that correlate with the severe limitations assessed. Dr. Zhang noted that plaintiff was appropriately dressed and groomed, cooperative, alert and oriented in all spheres, able to remain focused on the evaluation, and demonstrated only mild psychomotor retardation. *Id*. at 391-392. While plaintiff was noted to be below average in intellectual functioning, memory, and knowledge, these findings do not correspond with the limitations assessed, which included marked limitations in interacting appropriately with others and maintaining concentration, persistence, and pace. *See id*. at 391-392. Given the discrepancy between Dr. Zhang's reported observations from the exam and the severe limitations assessed, the ALJ logically concluded that Dr. Zhang's opinion was inconsistent with his own findings and that he relied heavily on plaintiff's subjective complaints

1 in reciting the assessed limitations, subjective complaints which the ALJ ultimately concluded
2 were not credible.[2] The record also suggests that plaintiff was not fully candid with Dr. Zhang,
3 which tends to further undermine the factual predicates on which he based his opinion. For
4 example, plaintiff denied a history of substance abuse (*id*. at 391), but medical records indicate
5 that plaintiff abused alcohol, cocaine, methamphetamines, and marijuana (*id*. at 365).

According, the ALJ provided legally sufficient reasons for rejecting Dr. Zhang's opinion.

### B. The ALJ Step-Two Finding is Supported by Substantial Evidence

Plaintiff next argues that the ALJ erred by failing to find that she has a severe neck impairment. ECF No. 15 at 12-14.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were not taken into account. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. §§ 404.1502(c) and 416.924(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p).

At step-two the ALJ found that plaintiff's severe impairments were fibromyalgia, lumbar degenerative disc disease, restrictive airway disease and sleep apnea, obesity, and a mood disorder. AR 21. Plaintiff contends, however, that the ALJ should have also found that plaintiff had a severe neck/cervical spine impairment. ECF No. 15 at 12-14

Treatment records from Dr. Grandhe, one of plaintiff's treating physicians, document plaintiff's complaints of neck pain. In July 2012, plaintiff complained of neck and low back pain.

---

[2] Plaintiff does not challenge the ALJ's finding that she was not credible.

AR 503. Her cervical spine was tender with rigidity and guarding, but it was noted to be within normal limits. *Id*. at 504. She was assessed with chronic fibromyalgia with cervical, thoracic, lumbar and sacroiliac myofascial pain syndrome. *Id*.  The following month, plaintiff continued to complain about neck and low back pain, and again demonstrated cervical tenderness. *Id*. at 511. In October 2012, she continued to complain of neck and low back pain. *Id*. at 518. An x-ray results showed "[c]ervical degenerative disc disease at C5-6 with stenosis C3-T1 (could be positional)." *Id*. In December 2012, plaintiff complained of localized low back pain, but no neck pain was noted. *Id*. at 529. In April 2013, plaintiff reported neck pain with headaches and pain in both shoulders, as well as low back pain. *Id*. at 532. Cervical tenderness was present. *Id*. May 2013 treatment notes reflect that an MRI of the cervical spine was performed, which showed a cervical disc bulge with stenosis. *Id*. at 535.  In June 2013, plaintiff reported chronic lower back pain and neck pain radiating to both shoulders. *Id*. at 533.  This time, only mild tenderness was present. *Id*. In July 2013, plaintiff complained of localized low back pain. *Id*. at 534. She also stated she had neck pain, but that it was "not as bad as before." *Id*. 534. At that time no cervical impairment was noted. *Id*. Medical records from October 2013 indicate that plaintiff received an "excellent response" to steroid injections and had experienced reduced back pain. *Id*. at 531. While she did complain of headaches, and bilateral occipital tenderness was noted, there was no indication that she continued to experience neck or related shoulder pain. *Id*.

      The ALJ considered these records in assessing plaintiff's severe impairment, and acknowledged plaintiff's diagnosis of choric fibromyalgia with cervical, thoracic, lumbar, and sacroiliac myofascial pain syndrome. *Id*.  While she did not explicitly state why plaintiff's neck pain was not severe, the ALJ correctly noted that Dr. Grandhe treated plaintiff's impairments with injections and nerve blocks, which provided good pain relief. *Id*. at 22, 505-529, 531-535.

      Significantly, other portions of the record support the finding that plaintiff's neck pain either resolved or never had more than a "minimal effect on the ability to do basic work activities.'" *Webb*, 433 at 686. No physician opined that plaintiff had a neck impairment that caused work-related limitations. More notably, plaintiff did not even allege at the administrative level that she had a neck impairment that impacted her ability to work. In her applications,

plaintiff's list of impairments included back pain, obesity, depression, bipolar disorder, and hypertension, but not neck pain or related impairment. AR 253. At her administrative hearing, plaintiff did not testify that she experiences neck pain that interferes with her ability to work and her attorney did not pose any questions regarding a neck or cervical spine impairment. *See id.* at 40-87. The closest plaintiff came to alleging a neck impairment was her testimony that she experienced back pain almost every day, which she described "mostly in her lower back and it moves toward my neck." *Id*. at 71. Simply put, plaintiff failed to demonstrate that she has a neck impairment that causes more than a minimal effect on her ability to work.

Consistent with this lack of evidence, plaintiff's opening and reply briefs in support of her motion for summary judgment fail to identify any specific limitation caused by her neck impairment. Rather than identify any functional limitation, plaintiff takes issue with the ALJ's failure to specifically mention the results of plaintiff's x-ray and MRI, which showed cervical degenerative changes. *See* AR 518, 535. These results, however, only demonstrate the existence of those changes and do not demonstrate an impairment that had more than minimal impact plaintiff's ability to work. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (finding that the ALJ did not commit reversible error by failing to consider an impairment where the plaintiff failed to point "to any evidence of functional limitation due to [her impairment] which would have impacted the ALJ's analysis."). Accordingly, the ALJ was not obligated to discuss plaintiff's x-ray and MRI results. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012 ("The ALJ is not required to discuss evidence that is neither significant nor probative.") (quoting *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)).

Accordingly, the ALJ did not err in finding that plaintiff did not have a severe neck impairment.

IV.   CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

/////

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 16, 2017.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

11